J-A20030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                          :            PENNSYLVANIA
                          :
           v.              :
                          :
                          :
ROGER LEWIS MILLS          :
                          :
           Appellant       :      No. 14 MDA 2019

Appeal from the PCRA Order Entered November 29, 2018
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000317-2016

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED JANUARY 03, 2020**

Roger Lewis Mills appeals from the denial of his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Mills argues that he presented meritorious ineffectiveness claims. We affirm.

In June 2017, a jury convicted Mills of unlawful assistance in voting and hindering or delaying the performance of duty.[1] The relevant facts to these convictions are as follows.

Linda Dantonio testified that she was a judge of election on the day in question. N.T., Trial, 6/29/17 ("Day 1"), at 44, 45, 46. She said that Mills was also present that morning, as a constable who was registered to vote that day. *Id.* at 46, 51-52. Dantonio testified that when Bryan Bradway arrived to vote,

_____

[1] 25 P.S. §§ 3530 and 3549, respectively.

his name was not in the polling book. *Id.* at 54-55. Dantonio told him that he would not be able to vote that day but gave him a registration card to fill out so he could vote next time. *Id.* at 55-56. While Dantonio and Bradway were speaking, Mills was at least five or six feet away. *Id.* at 59. Bradway then "went out the door, out the door into the hallway." *Id.* at 60.

Shortly afterward, Mills went over to the voting table and told Dantonio that he wanted to vote but needed assistance because he could not read or see. *Id.* at 60-61. Dantonio said "[Mills], you just told us you went through training to be a constable and you're reading the paper." *Id.* at 61. However, she allowed Mills to fill out a "Declaration of Assistance" form where Mills wrote, "By reason of vision problems I am unable to vote without the assistance of Bryan Bradway." *Id.* at 63-64. After filling out this form, Bradway and Mills went to a voting machine. *Id.* at 66. Dantonio saw "[Mills] . . . standing there with his back – Bryan Bradway is voting at the machine, and [Mills] has his back to Bryan looking out the window." *Id.* at 67. She testified that "Bryan wasn't assisting [Mills]. [Mills] wasn't even voting." *Id.* at 68.

After voting, Bradway left and Mills "went back to sitting at his chair that he was [at] before." *Id.* at 69. Later that day, Dantonio told Mills "what you did was not right." *Id.* at 72. Mills responded that "he just felt sorry for [Bradway]. He was – he served our country and he just wanted to vote." *Id.*

Bradway testified consistently with Dantonio's testimony. He said that he arrived to vote on the day of the incident but could not vote because his name was not in the polling book. *Id.* at 178. He filled out a registration card and proceeded to leave the building, at which point Mills approached him. *Id.* at 178-80. Mills asked Bradway if he wanted to vote and Bradway told Mills that he was informed that he could not do so. *Id.* at 180. Mills replied, "Well, I might have a way for you to vote today." *Id.* Mills at no point told Bradway that he wanted him to assist him in voting or that he had vision problems. *Id.* at 183. Bradway also did not know Mills prior to this day. *Id.* at 180. After Mills completed the assistance form, Bradway followed Mills to the voting machine and voted. *Id.* at 187. While voting, he did not speak with Mills. *Id.* However, at one point Mills was "looking over [Bradway's] shoulder" and at another point "was kind of looking out the window." *Id.* at 187, 188. Bradway testified that he did not assist Mills in voting. *Id.* at 188.

Mills testified and admitted that he turned his back for a period of time while Bradway voted and that he was looking out the window. N.T., Trial, 6/30/17 ("Day 2"), at 138. He testified that he made an agreement with Bradway for whom he should vote. *Id.* at 112, 139.

Trooper James Nizinski testified that he interviewed Mills over the phone and that Mills told him that he was "glad to help a veteran get to vote." *Id.* at 31.

Four other witnesses also testified, consistently with Dantonio's testimony, that Mills was standing with his back toward Bradway as he voted and that Mills filled out the assistance to vote form based on vision problems. **See**, N.T., Day 1, at 123-24,126, 142-143, 145, 159, 169-71.

The jury found Mills guilty of the above-referenced offenses. On August 21, 2017, the trial court sentenced Mills to a consecutive term of 48 hours to not more than 12 months' incarceration, followed by 12 months reporting probation. Mills filed a direct appeal but later withdrew the appeal.

Mills filed the instant timely, counseled PCRA petition, alleging that he "discussed the possibility of calling character witnesses at [t]rial, however, [t]rial [c]ounsel never placed any character witnesses on the stand." **See** Brief In Support of Motion for Post Conviction Collateral Relief ("PCRA Petition"), filed 9/21/18, at 1 (unpaginated).  Attached to his "Motion for Post Conviction Collateral Relief," Mills included nine separate affidavits from people who wrote "Roger Mills reputation for being a law abiding citizen is excellent" and "I know Roger Mills reputation for being a law abiding citizen" among people in the community. **See** Motion for Post Conviction Collateral Relief ("PCRA Motion"), filed 7/26/18, at 11-20 (unpaginated). He also claimed that counsel failed to properly cross-examine Bradway as to his prior inconsistent statements. **Id.** at 2-4 (unpaginated).

At an evidentiary hearing, Mills testified that he and his wife asked trial counsel about presenting character witnesses and counsel "kept telling us he

didn't want any [character witnesses] that we wouldn't need any character witnesses; that he didn't want to upset the Judge any more." N.T., PCRA Evidentiary Hearing ("PCRA Hearing"), 11/29/18, at 38-39. He also testified that all nine witnesses he included in his PCRA motion were available to testify at trial. *Id.* at 40. Mills testified that he also pointed out to counsel Bradway's inconsistent statements, but counsel told him that he did not want to make the judge "any madder." *Id.*

Trial counsel testified that Mills never told him of any character witnesses that he wanted to testify at trial. *Id.* at 93. He also testified that his strategy was to focus on Mills' credibility rather than his character, since he was going to testify in his own defense. *Id.* at 71. Counsel also pointed out that he impeached Bradway on his prior inconsistent statements. *Id.* at 105. However, he testified that he did not aggressively cross-examine Bradway for fear that it would not go well with the jury since he was an Afghanistan war veteran. *Id.* at 84

At the conclusion of the hearing, the PCRA court denied the petition. Regarding the claim of ineffectiveness for failure to call character witnesses, the PCRA court concluded that Mills failed to show that there was reasonable probability that if such witnesses had testified, the outcome of the trial would have been different. The court noted that the evidence against Mills was overwhelming:

> There was so much evidence against [Mills] from the election officials and there were multiple witnesses to Mr. Bradway that I don't think if we would have paraded twenty character witnesses in to testify consistent with the affidavits it would have in any way changed the outcome of this trial.

*Id.* at 136. The court also noted that it did not find Mills' testimony credible.

*Id.* at 134, 135.

The PCRA court also denied the claim of counsel's alleged ineffectiveness in failing to cross-examine Bradway. The court found that Mills failed to show that there was no reasonable basis for counsel's method of cross-examining Bradway:

> [Trial counsel] explained that Mr. Bradway was - - it was established at trial he was a veteran; and the [c]ourt observing Mr. Bradway's testimony, he came across as extremely sincere and actually appeared almost as a victim himself of this.
>
> ***
>
> Trial counsel did ask multiple questions of Mr. Bradway raising the issues of prior inconsistent statements and the questions about the glasses. While a different attorney may ask them differently, may ask more of them, I think trial counsel's decision not to appear to be attacking Mr. Bradway was a sound decision and supported by the facts of this case. Although there was - - in closing and in his questions of Mr. Bradway, the inconsistencies were pointed out.

*Id.* at 132,133.

Following the denial of the PCRA petition, Mills filed the instant timely appeal. On appeal, Mills asks us to review the following claims:

> I. Did the Lower Court error [sic] in finding that Trial Counsel was ineffective for failing to call character witnesses during the Trial?

- 6 -

> II. Did the Lower Court error [sic] when it failed to find Trial Counsel ineffective for failing to cross-examine witnesses with prior inconsistent statements?

Mills' Br. at 4.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***See Commonwealth v. Conway***, 14 A.3d 101, 108 (Pa.Super. 2011).

There is a presumption that counsel is effective. ***See Commonwealth v. Daniels***, 963 A.2d 409, 427 (Pa. 2009). To overcome this presumption, a petitioner must establish three things: (1) the underlying claim has arguable merit, (2) counsel had no reasonable strategic basis for his or her action or inaction, and (3) the petitioner has been prejudiced by counsel's error. ***See Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). Prejudice is established where the appellant shows that "but for the act or omission in question, the proceeding's outcome would have been different." ***See Commonwealth v. Small***, 980 A.2d 549, 559 (Pa. 2009).

Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if counsel's chosen course was reasonably designed to effectuate the client's interests. ***See Commonwealth v. Puksar***, 951 A.2d 267, 277 (Pa. 2008). "[T]rial decisions, especially those pertaining to the nature and extent of cross-examination, are matters of style

and tactics . . . which ordinarily are within the exclusive province of the trial counsel." **Commonwealth v. Petras**, 534 A.2d 483, 487 (Pa.Super. 1987).

Mills' first claim is that the PCRA court erred in denying his ineffectiveness claim that counsel failed to call character witnesses during trial. This claim fails as Mills did not establish that he was prejudiced by counsel's omission.

As referenced above, the PCRA court denied this claim concluding that due to the immense testimony against Mills, calling character witnesses would not "have in any way changed the outcome of this trial." N.T., PCRA Hearing, at 136. This conclusion of the court is supported by the record. A total of five witnesses testified that they observed Mills fill out the assistance form so he could vote but in fact did not vote. Instead, Bradway voted while Mills had his back turned. Furthermore, Mills admitted at trial that he was looking out the window while Bradway voted. The PCRA court did not abuse its discretion in denying this claim.

Next, Mills claims the PCRA court erred in denying his claim that trial counsel was ineffective for failing to cross-examine Bradway. We conclude that the PCRA court committed no error in denying this claim.

Mills argues that trial counsel failed to cross-examine Bradway about inconsistent statements he made concerning where Mills was looking while Bradway operated the voting machine, and whether he saw part of Mills' glasses on Mills' person. The record belies this argument.

Counsel in fact cross-examined Bradway regarding his inconsistent statements. Specifically, counsel cross-examined him about whether Mills was looking out the window or looking over his shoulder while Bradway was voting and whether he saw Mills with glasses. *See*, N.T., Day 2, at 15-16. Counsel also cross-examined Bradway about adding the new fact during the course of trial that he saw a piece of Mills' glasses sticking out of his pocket. *Id.* at 18. While this may not have been the extensive cross-examination that Mills hoped for, counsel nonetheless brought out Bradway's inconsistent statements. Furthermore, as the PCRA court concluded, Mills failed to show any prejudice he suffered as a result of counsel's cross-examination. Multiple witnesses testified that Bradway was the one who voted despite Mills' claim that Bradway was merely assisting him to vote. In any event, even if we were to conclude that the court erred in denying Mills' PCRA petition, it appears he is no longer serving a sentence for the conviction for which he seeks relief, and we therefore could not afford him relief. *See* 42 Pa.C.S.A. § 9543(a)(1)(i) (stating that in order to be eligible for PCRA relief, petitioner must plead and prove that petitioner is "currently serving a sentence of imprisonment, probation or parole for the crime"). Therefore, we affirm the order of the PCRA court denying Mills' PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/03/2020</u>